## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

       EUGENE FOSTER,
       ROBERT FISK,

       Plaintiffs,

v.

       MOUNTAIN COAL COMPANY, L.L.C.,
       ARCH WESTERN RESOURCES, L.L.C.,
       ARCH COAL, INC.

Defendants.

---

## COMPLAINT, REQUEST FOR DECLARATORY JUDGMENT, AND JURY DEMAND

---

Plaintiffs, Eugene Foster and Robert Fisk, through their undersigned counsel, KILLIAN

DAVIS Richter & Mayle, PC, submit this Complaint, Request for Declaratory Judgment, and

Jury Demand, and allege as follows:

### PARTIES AND JURISDICTION

1.      The acts complained of occurred in Gunnison County, Colorado.

2.      Plaintiff Eugene Foster ("Foster") is a resident of Delta County, Colorado, and has been at all relevant times hereto.

3.      Plaintiff Robert Fisk ("Fisk") is a resident of Delta County, Colorado, and has been at all relevant times hereto.

4.      Defendant Mountain Coal Company, L.L.C. ("Mountain Coal Company") is incorporated in the State of Delaware.

5.      Mountain Coal Company is authorized to do business in the State of Colorado, and is doing business in Gunnison, Colorado.

6.      Mountain Coal Company operates in Colorado under the name Mountain Coal Company of Colorado, L.L.C.

7.      Defendant Arch Western Resources, L.L.C. ("AWR") is incorporated in the State of Delaware.

8.      AWR is not authorized to do business in the State of Colorado.

9.      AWR is doing business in Gunnison, Colorado.

10.     Defendant Arch Coal, Inc. ("Arch Coal"), is incorporated in the State of Delaware.

11.     Arch Coal is authorized to do business in the State of Colorado, and is doing business in Gunnison, Colorado.

12.     Defendants Mountain Coal Company, L.L.C., Arch Western Resources, L.L.C., and Arch Coal, Inc., are hereinafter referred to collectively as "Mountain Coal."

13.     Mountain Coal Company is a wholly-owned subsidiary of AWR.

14.     Arch Coal owns ninety-nine percent of AWR.

15.     The remaining one percent of AWR is owned by Atlantic Richfield Company ("ARCO").

16.     Mountain Coal Company's primary business office is located at City Place One, Suite 300, St. Louis, Missouri, 63141.

17.     Upon information and belief, AWR's primary business office is located at City Place One, Suite 300, St. Louis, Missouri, 63141.

18.     Arch Coal's primary business office is located at City Place One, Suite 300, St. Louis, Missouri, 63141.

19.     Mountain Coal Company's registered agent for the State of Colorado is The Corporation Company, 1675 Broadway, Denver, Colorado, 80202.

20.     AWR's registered agent for the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

21.     Upon information and belief, AWR's registered agent for the State of Colorado is The Corporation Company, 1675 Broadway, Denver, Colorado, 80202.

22.     Arch Coal's registered agent for the State of Colorado is The Corporation Company, 1675 Broadway, Denver, Colorado, 80202.

23.     Officers and management of Mountain Coal Company attended seminars and managers' meetings at Arch Coal's offices in St. Louis, Missouri.

24.     Mountain Coal Company's short-term disability program, which included administration of Family Medical Leave Act for Mountain Coal employees, was provided through Arch Coal.

25.     Mountain Coal Company's workers' compensation insurance coverage was provided or administered through AWR and/or Arch Coal.

26.     Payroll taxes for Mountain Coal Company's employees were administered through AWR and/or Arch Coal.

27.     Arch Coal and/or AWR was listed as the employer on the plaintiffs' W-2 forms.

28.     Mountain Coal Company's unemployment insurance coverage was provided or administered through AWR and/or Arch Coal.

29.     Employment application forms used to hire new employees of Mountain Coal Company were on forms provided by Arch Coal.

30.     Upon information and belief, employment application forms used to hire new employees of AWR were on forms provided by Arch Coal.

31.     Mountain Coal Company submits employment information to Arch Coal, which then submits a single EE0-1 form to the EEOC on behalf of Arch Coal.

32.     Upon information and belief, AWR submits employment information to Arch Coal, which then submits a single EE0-1 form to the EEOC on behalf of Arch Coal.

33.     Mountain Coal Company's sexual harassment policy was promulgated by Arch Coal.

3

34.     Upon information and belief, AWR's standardized employee benefits package, payroll work week, daily work hours schedule and other policies and procedures are based on Arch Coal's business needs.

35.     Upon information and belief, AWR's sexual harassment policy was promulgated by Arch Coal.

36.     Mountain Coal Company's standardized employee benefits package, payroll work week, daily work hours schedule and other policies and procedures are based on Arch Coal's business needs.

37.     Mountain Coal Company and AWR are an integrated enterprise.

38.     Mountain Coal Company, AWR, and Arch Coal are an integrated enterprise.

39.     Foster's claims for relief arise out of the American's with Disabilities Act, ("ADA") 42 U.S.C. §12101, *et seq.*, and Colorado state law claims.

40.     Fisk's claims for relief arise out of the ADA, 42 U.S.C. §12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et. seq.*, and Colorado state law claims.

41.     On October 9, 2008, Foster filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 32A-2009-00029) and the Colorado Civil Rights Division ("CCRD").

42.     On September 27, 2012, the EEOC issued a Notice of Right to Sue to Foster.

43.     Foster filed this Complaint within ninety days of his receipt of his Notice of Right to Sue.

44.     Fisk filed a charge of discrimination with the EEOC (Charge No. 541-2009-02709) and the CCRD.

45.     On September 27, 2012, the EEOC issued a Notice of Right to Sue to Fisk.

46.     Fisk filed this Complaint within ninety days of his receipt of his Notice of Right to Sue.

47.     Mountain Coal is an employer as defined by 42 U.S.C. § 12111 (5)(A).

48.     Jurisdiction is proper pursuant to 28 U.S.C. §1331.

49.     Jurisdiction is also proper pursuant to 28 U.S.C. §1332, in that the plaintiffs are citizens of different states than the defendants, there is complete diversity, and the amount in controversy is greater than $75,000.00.

50.     The court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

51.     Venue is proper pursuant to 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

52.     Plaintiffs incorporate by reference each and every paragraph of this Complaint.

53.     Mountain Coal operates a coal mining operation near the town of Somerset, County of Gunnison, State of Colorado.

54.     Mountain Coal distributes coal via railroad from West Elk Mine through western Colorado to various states throughout the United States.

55.     ARCO owned and operated the West Elk Mine prior to Mountain Coal's purchase of the mine in approximately 1998.

56.     Mountain Coal Company completely took over the operations of the West Elk Mine in approximately 1999.

57.     AWR is the parent corporation of Mountain Coal Company.

58.     Mountain Coal previously had a written policy that if an employee was injured, the employee could not return to work unless the employee obtained a doctor's note indicating that employee had "no restrictions."

59.     This indicates that Mountain Coal holds the position that unless an employee has no restrictions or limitations, he is unable to perform the functions of the job.

60.     Mountain Coal regards as disabled any employee who has any limitation regardless of how minor or whether the limitation can be overcome with a reasonable accommodation.

5

61.     In determining whether an employer regards an employee as disabled "The focus is on the impairment's effect upon the attitude . . ." of the employer. *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1444 (10th Cir. 1996).

62.     Mountain Coal removed the "no restriction" policy from its written policies.

63.     However, Mountain Coal still had an unwritten policy that an employee cannot return to work unless he has no restrictions or limitations.

64.     Mountain Coal enforced its "no restrictions" policy while plaintiffs worked for Mountain Coal.

65.     Mountain Coal still regarded any employee with a limitation as disabled while plaintiffs worked for Mountain Coal.

## FOSTER

### A.     Injury on February 5, 2008

66.     Foster began working for Mountain Coal in November of 2002.

67.     Foster's job title was Longwall Maintenance Supervisor.

68.     Foster began noticing pain in his neck during 2005.

69.     Foster was examined by doctors who told him that he had bone spurs from years of working in the mines.

70.     On February 5, 2008, Foster was working in the West Elk Mine.

71.     While Foster was in the mine, rocks began falling – this was a thunderous noise which startled and frightened him.

72.     Foster turned his head quickly to see if the rocks were going to hit him.

73.     Foster felt something "pop" in his neck.

74.     Foster remained underground for the rest of his shift, although he primarily sat in his truck because he was in extreme pain.

75.    Ultimately, Foster had to be carried out of the mine by electricians who were aware of his injury.

**B.    Foster went to the ER on February 6, 2008 – Obtained Work Release**

76.    The next day, Foster intended to go to work but was experiencing intense pain in his neck.

77.    Foster was vomiting from the severity of the pain.

78.    Foster called Lance Trujillo ("Trujillo"), assistant maintenance superintendent for the West Elk Mine.

79.    Foster told Trujillo that he could not come in to work.

80.    Trujillo said "ok" and told Foster to go to a doctor.

81.    Foster went to the Delta Hospital ER.

82.    The doctor at the Delta Hospital ER told Foster that the quick jerking movement of his neck caused him to a chip bone fragment off of a cervical vertebrae.

83.    The ER doctor gave Foster a shot of pain killer and oxycotin pills for pain.

84.    The ER doctor wrote a work release slip for that day, February 6, 2008, and the next.

85.    This work release slip allowed Foster to return to work duties on February 8, 2008.

86.    The ER doctor did not write a work release slip for a longer period than two days because Foster was scheduled to be off for a week starting two days after the doctor visit and he was already scheduled for short-term disability leave for a month due to a hernia surgery scheduled for the following Friday.

**C.    2007 Hernia at Work**

87.    Foster developed a hernia at work approximately a year prior to February 5, 2008.

88.    Foster reported the hernia to Dan Kunde ("Kunde"), his supervisor at work.

89.     Kunde asked Foster, "Well, you're not going to turn that into workman's comp are you?"

90.     Foster said "No. I'll be a team player."

91.     Foster went to see Dr. Funk who told him he would have to get the hernia repaired.

92.     After about one year, the hernia started to bother Foster and became infected, so Foster scheduled surgery with Dr. McCrackin on February 15, 2008, to have it repaired.

93.     About one month prior to surgery, Foster told Kunde and Sandy White ("White"), a human resources representative, that he was having surgery on February 15, 2008.

94.     Kunde and White said "ok" and scheduled Foster to be on Code 60, which is short term disability, for four weeks starting February 15, 2008.

95.     Foster was to draw full salary during the time he was off for the hernia surgery.

**D.     February 10, 2008, Meeting with Ed Langrund**

96.     On February 10, 2008, Foster was called by Ed Langrund ("Langrund"), another management figure at the West Elk Mine, to come in for a meeting to discuss Foster's neck injury.

97.     Foster went in to meet with Langrund.

98.     Pete Wyckhoff ("Wyckhoff"), who was the GM/Vice-President, Jim Miller ("Miller"), who was a manager, Bill Olson ("Olson"), who was a safety director, Kevin Jensen ("Jensen"), who is a maintenance superintendent, and Kunde were all present at the meeting.

99.     Olson said he spoke with St. Louis, the main office for Mountain Coal, and they said "this [neck injury] wasn't going to be a workman's comp matter."

100.    Although the neck injury was a work injury, Foster said he had not filed a workman's comp claim.

101.    Kunde said he would complete a red sheet (an accident report).

102.    Langrund said "there's another doctor in Montrose you need to see named Dr. Dwyer."

8

103.    Foster explained the circumstances of the neck injury to those at the meeting and said it occurred on February 5, 2008.

104.    Foster gave Langrund a folder from the ER indicating his treatment for the neck injury.

105.    The folder also contained a Return to Work Slip.

106.    Langrund said that the company put him on Code 60 (short term disability) starting February 6, 2008.

107.    Langrund wanted the short term disability to start on February 6, 2008, in order to avoid a "lost time" injury which would have to be reported to MSHA and could result in sanctions from MSHA because of safety concerns.

108.    Foster said he was not scheduled to go on Code 60 until February 15, 2008, to repair the hernia.

109.    Foster requested not to be put on Code 60 yet.

110.    Langrund said "that's not a problem, just make sure we get the right paper work." Langrund was referring to a Return to Work Slip.

111.    Foster said "I just gave you the return to work slip."

112.    Langrund said they needed the Return to Work Slip completed on a Mountain Coal form.

113.    Foster said he would get the Return to Work Slip completed on a Mountain Coal Form in addition to the Return to Work Slip he already provided Mountain Coal.

**E.      Dr. Funk's Release to Work Form**

114.    Foster went in for hernia surgery and brought the Mountain Coal Return to Work Slip with him.

115.    Foster told the ER staff from which he had previously obtained a work release form, that his employer wanted the release on its own form.

116.    The ER said they will not fill out another Return to Work Slip on a Mountain Coal form and that he must get it filled out by his family doctor.

9

117.     Foster's girlfriend, Diane, took the Mountain Coal Return to Work Slip to Dr. Funk's office while Foster was undergoing surgery.

118.     Dr. Funk was out of the office for a week, but Foster went to pick up the completed form after Dr. Funk returned.

119.     Foster took the form completed by Dr. Funk to the mine office at the West Elk Mine.  No one was in the office at the time.

120.     Foster left the Mountain Coal form completed by Dr. Funk in an envelope on White's desk with her name on it.

**F.      Mine Requested Third Work Release Form**

121.     Two weeks later, Foster's paycheck was cut to 60%.

122.     Foster called the West Elk Mine office to obtain an explanation. The receptionist told him that his pay was cut because he was on Code 60 since February 6, 2008.  White also spoke to Foster on the phone and gave him the same explanation.

123.      Foster explained that his Code 60 was to begin on February 15, 2008, which had been explained in the meeting on February 10, 2008.

124.     Foster also asked White about the Return to Work Slip he left for her.

125.     White said she never received the Return to Work Slip Foster left on her desk.

126.     Despite Foster already providing Mountain Coal two Return to Work Slips, White said she needed another one.

127.     Foster went to see Dr. Funk to get another form filled out.

**G.      Third Release Form Provided**

128.     Foster went back up to mine to give the third Return to Work Slip to White.

129.     Foster gave White the form in the West Elk Mine office.

130.      Langrund walked in and called a meeting with Miller, Trujillo, White, the receptionist, and Foster.

131.    Langrund said he "did not know anything about Code 60 starting on February 15, 2008."

132.    Miller corrected him and said that Langrund did know because he was at the previous meeting in which it was agreed that Foster's Code 60 would begin on February 15, 2008.

133.    Langrund relented and directed that Foster should be paid the money that was withheld from his check.

134.    Foster received a new check one week later.  At the meeting, Mr. Miller and Mr. Langrund confirmed that Foster's Code 60 would start on February 15, 2008.

**H.    Work Release from Dr. McCrackin**

135.    Foster went to see Dr. McCrackin.

136.    Dr. McCrackin completed another Return to Work Slip, which released Foster to return to work in March, 2008 after he had recovered from his hernia surgery.

137.    Foster took the form to the West Elk Mine office.

138.    The office was empty except for a temporary receptionist.  Another human resources manager, John, was in the office, but was on a conference call.  The human resources manager had a sign on his office door saying "do not disturb until 10:30."

139.    Foster waited for one and a half hours for John.  Foster was about to give the human resources manager the Return to Work Slip, but Mr. Langrund entered the office and the Return to Work Slip was given to Mr. Langrund.

**I.    Mine Accuses Foster of Fraud**

140.    Foster returned to work the following Monday.

141.    Foster was scheduled to work four days and be off one week.

142.    On Wednesday of that week, Miller called Foster to his office.

143.    Miller said they called Dr. Funk's office and Funk said he never saw Foster for a neck problem.

11

144.    Foster explained that the ER refused to fill out another Return to Work Slip on a Mountain Coal from after Langrund refused to accept the Return to Work Slip the ER had previously provided.  Foster explained that the ER requested that any additional form be filled out by Foster's family doctor, Dr. Funk.

145.    Foster also explained to Miller that he never represented that he saw Dr. Funk for his neck problems. He explained that his original Return to Work Slip indicated that he was seen by an ER doctor for his neck, but Mountain Coal would not accept this Slip because Langrund wanted the document on a Mountain Coal Form.

146.    Mountain Coal said they could not locate either of the first two Return to Work Slips Foster had provided them.

147.    Miller, implying that Foster had committed some form of fraud, told Foster that he was suspended pending investigation.

**J.    Dr. Dwyer Recommends Neck Fusion in April 2008**

148.    On Friday of that week, Foster had an appointment with Dr. Dwyer for his neck injury.

149.    Dr. Dwyer recommended a bone fusion surgery and told Foster to stay off work until the neck injury was repaired.

150.    Foster also saw Dr. Funk and Dr. Nelson.  They both agreed that Foster should have bone fusion surgery and stay off work until his neck injury was repaired.

151.    Dr. Funk drafted a letter stating that Foster should be off work due to his neck injury starting April 10, 2008 until he recovered from surgery.

152.    Foster called Kunde and read him Dr. Funk's letter. Mr.  Kunde said "that's fine."

153.    Foster asked about the status of the suspension. Kunde said he did not know about the status of the suspension.

154.    Subsequently, Dr. Funk sent the letter regarding Foster's neck to Mountain Coal.

**K.    Termination Letter Based on Alleged Fraud**

155.    On April 14, 2008, Foster received a termination letter, which stated that his employment was terminated effective April 9, 2008.

156.    The termination letter was dated April 11, 2008, and indicated he was being terminated because he gave "false information" apparently related to Dr. Funk's return to work letter.

157.    The letter also stated that Foster's health insurance was cancelled starting April 9, 2008.

**L.    Foster has an Actual Disability**

158.    Foster suffered a severe aggravation of a degenerative cervical spine condition on February 5, 2008.

159.    Foster has bulging discs in his cervical spine and what his doctors describe as "huge" osteophytes.

160.    Foster was examined by doctors who told him that his osteophytes had likely developed from years of working in the mines.

161.    A person is considered disabled under the ADA if he has an impairment that substantially limits a major life activity. 42 U.S.C. §12102(2).

162.    Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* C.F.R. § 1630.2(i), 29 C.F.R. § 1614.203(a)(3).

163.    "[O]ther major life activities include, but are not limited to, sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630. Sleeping is also a major life activity. *Pack v. Kmart Corp.*, 166 F.3d 1300 (10th Cir. 1999).

164.    As a result of his neck injury, Foster is substantially limited in many major life activities.

165.    In regard to sleeping, Foster is only typically able to sleep for approximately one hour at a time due to the pain in his neck. This causes severe restlessness while attempting to sleep and requires him to get up frequently throughout the night.

166.    In regard to sitting, Foster experiences significant pain in his neck while sitting. He can only typically remain seated for thirty minutes at a time before he has to change positions by either standing up or lying down.

167.   Foster has similar difficulty with standing. He experiences significant pain in his neck while standing and can usually only remain in a standing position for approximately thirty minutes before either having to sit down or lie down. Foster also has substantial limitations in his walking ability.  As a result of the pain in his neck, Foster is forced to walk with his back in a rigid stance, which slows his movement and makes him more susceptible to falling or being unable to catch himself if he stumbles.

168.   Foster also has substantial limitations in regard to lifting or reaching. Because of the impairment in his neck, Foster is unable to lift objects over his shoulders or reach for objects which are over his shoulders.

169.   Each of the above-referenced life activities described above is a function of Foster's job duties as Longwall Maintenance Supervisor with Mountain Coal. As such, Foster also has substantial limitations in working, which is a major life activity.

170.   Because Foster has substantial limitations in a number of major life activities, Foster is disabled under the ADA.

**M.     Mountain Coal Regarded Foster as Disabled**

171.   In addition to Mr. Foster's neck injury, he also suffered another work-related injury.

172.   Mr. Foster sustained a peri-umbilical hernia during the course and scope of his employment with Mountain Coal.

173.   Foster's hernia developed over the course of 2007 and Foster began to experience severe pain and symptoms in January of 2008.

174.   As a result of his hernia, Mr. Foster was limited in his lifting ability at work. He brought this to the attention of his supervisors.

175.   Foster was seen for his hernia by his primary care physician, Dr. Funk, who referred him to Dr. McCrackin at Delta County Memorial Hospital.

176.   Foster underwent a hernia repair operation with Dr. McCrackin on February 15, 2008.

177.   Foster's doctors contend that the hernia was sustained as a result of repetitive lifting and straining while at work in the mines.

14

178.    Although Mr. Foster experienced significant pain and limitations as a result of the hernia, the problems and limitations related to the hernia resolved subsequent to the corrective surgery.

179.    Because of Mr. Foster's neck injury and hernia, Mountain Coal regarded Mr. Foster as disabled under its "no restrictions" policy.

### N.    Mountain Coal Retaliated Against Foster for Engaging in a Protected Activity

180.    Foster requested reasonable accommodations for his disability.

181.    Foster requested leave to have surgery to repair his hernia on February 15, 2008, and requested leave to have surgery for his neck injury in April, 2008.

182.    On April 11, 2008, Mr. Foster submitted a letter to respondent from his treating physician, Dr. Funk, indicating that Mr. Foster would require surgery for his neck injury and would be unable to work until after the surgery.

183.    Foster would have been able to perform the essential functions of his job without reasonable accommodations had Mountain Coal given him short-term leave to have surgery to repair his neck injury and recover from the surgery.

184.    Foster would have been able to perform the essential functions of his job with reasonable accommodations had Mountain Coal given him short-term leave to have surgery to repair his neck injury and recover from the surgery.

185.    When he was terminated, Foster was qualified to perform other less strenuous available positions at Mountain Coal without reasonable accommodations.

186.    When he was terminated, Foster was qualified to perform other less strenuous available positions at Mountain Coal with reasonable accommodations.

187.    A reasonable leave period for medical care and treatment is a form of reasonable accommodation. *Rascon v. U.S. West Commc'ns, Inc.*, 143 F.ed 1324 (10th Cir. 1998); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002).

188.    Foster's request for leave to have his surgeries constitutes a request for reasonable accommodation.

189.    Requesting an accommodation qualifies as engaging in a protected activity. *Wright v. CompUSA Inc.*, 352 F.3d 472 (1st Cir. 2003).

190.    On April 14, 2009, three days after Mr. Foster submitted his request for accommodation to have neck surgery, he received a letter from Mountain Coal indicating that he was terminated.

## FISK

191.    Fisk was employed by Mountain Coal as a miner.

192.    Fisk began working for Mountain Coal on May 22, 2001.

193.    Fisk injured his ankle while working at the West Elk Mine on March 9, 2008.

194.    Fisk was granted leave from work from March 11, 2008, through March 17, 2008.

195.    Fisk had a STAR ankle replacement surgery by Dr. Clanton on March 27, 2009.

196.    Prior to the surgery, Fisk requested leave to recover from the surgery.

197.    Mountain Coal granted Fisk's request for leave to recover from the surgery.

198.    Approximately six weeks after the surgery, Fisk was released by his doctor to return to light duty.

199.    Fisk called Mountain Coal to see if he could return to the mine on a light-duty assignment.

200.    Fisk spoke by telephone with Dewey Walker ("Walker") about whether he could return on a light-duty assignment.

201.    Walker told Fisk: "You know we can't do that."

202.    Walker rejected Fisk's request for a light-duty assignment because of Mountain Coal's "no restrictions" policy.

203.    Fisk was terminated from his position with Mountain Coal in June, 2009, while he was on leave recovering from his STAR ankle replacement surgery.

204.    Fisk was terminated as part of an alleged "reduction in force" by Mountain Coal.

16

205. Approximately 65 employees were terminated during the June, 2009, reduction in force.

206. Upon information and belief, at least 75% of the employees terminated during the June, 2009, reduction in force had previously been injured while working at the West Elk Mine.

207. Upon information and belief, at least 50% of the employees terminated during the June, 2009, reduction in force were over the age of 40.

208. At the time he was terminated, Fisk was over 50 years old.

209. The employees terminated during the June, 2009, reduction in force were terminated at a meeting.

210. The meeting was run by Don Vickers ("Vickers").

211. During the meeting, someone asked if there would be any opportunity for the employees to be rehired by Mountain Coal in the future.

212. Vickers indicated that there would be no opportunity for the employees terminated during the June, 2009, reduction in force to be rehired by Mountain Coal in the future.

213. Mountain Coal informed Fisk that he was terminated because of his rating in the June, 2009, reduction in force analysis.

214. Mountain Coal awarded Fisk points for "1-5 years of service" at the West Elk Mine.

215. At the time of the analysis, Fisk had worked at the West Elk Mine for more than 5 years.

216. Fisk should have received more points for "6-10 years of service."

217. Fisk was disciplined for not "locking out" a belt before working on the belt.

218. Other employees, including supervisors, had previously worked on the belt without "locking out" the belt and were not disciplined.

219. Fisk was also disciplined for not calling in before missing a shift.

220. Fisk's wife called in for him to notify Mountain Coal that he was going to miss a shift.

221. Other employees had previously been allowed to have their spouses call in for them to notify Mountain Coal that they would be missing their shifts. These employees were not disciplined.

222. The discipline for not locking out the belt and for Fisk having his wife call in for him was pretextual.

223. As a result of the discipline, Fisk was deducted points on the June, 2009, reduction in force analysis.

224. On the June, 2009, reduction in force analysis, Fisk was awarded only eight points for certifications.

225. Mountain Coal did not explain why Fisk was awarded only 8 points for certifications.

226. On the June, 2009, reduction in force analysis, Fisk was awarded 50 out of a possible 250 points for "behavior-based safety standards."

227. Mountain Coal did not explain why Fisk was awarded only 50 points for behavior-based safety standards.

228. Upon information and belief, Fisk had more certifications and more experience than some employees who were not terminated during the June, 2009, reduction in force.

229. Upon information and belief, Fisk had a better safety record than some employees who were not terminated during the June, 2009, reduction in force.

230. Mountain Coal's June, 2009, reduction in force analysis, was not an objective analysis.

231. Mountain Coal's June, 2009, reduction in force analysis was pretextual.

232. Mountain Coal's June, 2009, reduction in force analysis, as applied to Fisk, was pretextual.

18

**A.    Fisk has an Actual Disability**

233.    Fisk suffered a severe ankle injury while working at the West Elk Mine.

234.    The injury eventually resulted in Fisk needing a total ankle replacement.

235.    A person is considered disabled under the ADA if he has an impairment that substantially limits a major life activity. 42 U.S.C. §12102(2).

236.    Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* C.F.R. § 1630.2(i), 29 C.F.R. § 1614.203(a)(3).

237.    "[O]ther major life activities include, but are not limited to, sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630. Sleeping is also a major life activity. *Pack v. Kmart Corp.*, 166 F.3d 1300 (10th Cir. 1999).

238.    As a result of his neck injury, Fisk is substantially limited in many major life activities.

239.    Because Fisk has substantial limitations in a number of major life activities, Fisk is disabled under the ADA.

**B.    Mountain Coal Regarded Fisk as Disabled**

240.    Because of Fisk's ankle injury, Mountain Coal regarded Fisk as disabled under its "no restrictions" policy.

**C.    Mountain Coal Retaliated Against Fisk for Engaging in a Protected Activity**

241.    Fisk requested reasonable accommodations for his disability.

242.    Fisk requested leave to have surgery to repair ankle.

243.    Fisk would have been able to perform the essential functions of his job without reasonable accommodations had Mountain Coal given him short-term leave to have surgery to repair his ankle injury and recover from the surgery.

244.    Fisk would have been able to perform the essential functions of his job with reasonable accommodations had Mountain Coal given him short-term leave to have surgery to repair his ankle injury and recover from the surgery.

245. When he was terminated, Fisk was qualified to perform other less strenuous available positions at Mountain Coal without reasonable accommodations.

246. When he was terminated, Fisk was qualified to perform other less strenuous available positions at Mountain Coal with reasonable accommodations.

247. A reasonable leave period for medical care and treatment is a form of reasonable accommodation. *Rascon v. U.S. West Commc'ns, Inc.*, 143 F.ed 1324 (10th Cir. 1998); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002).

248. Fisk's request for leave to have his surgery and to recover from the surgery constitutes a request for reasonable accommodation.

249. Fisk requested to return to light-duty approximately six weeks after his surgery.

250. Fisk would have been able to perform the essential functions of a light-duty shift approximately six weeks after his surgery.

251. Fisk's request for a light-duty shift was denied.

252. Fisk's request to return to light-duty constitutes a request for reasonable accommodation.

253. Requesting an accommodation qualifies as engaging in a protected activity. *Wright v. CompUSA Inc.*, 352 F.3d 472 (1st Cir. 2003).

254. Fisk was terminated while he was on leave recovering from his ankle surgery.

### FIRST CLAIM FOR RELIEF – FOSTER AND FISK
### AMERICANS WITH DISABILITIES ACT (Failure to Reasonably Accommodate)
### ADA - 42 U.S.C. §12112
### Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions. §104A.03 & § 104A.09

255. Plaintiffs incorporate by reference every paragraph of this Complaint.

256. Foster has a physical impairment, namely a cervical spine condition, which substantially limits one or more major life activities.

257. Fisk has physical impairment, namely a lower leg injury, which substantially limits one or more major life activities.

258.   Foster was regarded by Mountain Coal, his employer, as having a physical impairment that substantially limits one or more major life activities.

259.   Fisk was regarded by Mountain Coal, his employer, as having a physical impairment that substantially limits one or more major life activities.

260.   Foster is an individual with a disability, pursuant to the ADA, 42 U.S.C. § 12102(2), since he was regarded by Mountain Coal as having a physical impairment that substantially limits one or more major life activities.

261.   Fisk is an individual with a disability, pursuant to the ADA, 42 U.S.C. § 12102(2), since he was regarded by Mountain Coal as having a physical impairment that substantially limits one or more major life activities.

262.   Pursuant to 42 U.S.C. § 12111(8), Foster is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold with Mountain Coal.

263.   Pursuant to 42 U.S.C. § 12111(8), Fisk is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold with Mountain Coal.

264.   Mountain Coal could have reasonably accommodated Foster's disability by making modifications to the work place which would have allowed a person with a disability such as Foster to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Foster's disability by offering him a reassignment to a vacant position.

265.   Mountain Coal could have reasonably accommodated Fisk's disability by making modifications to the work place which would have allowed a person with a disability such as Fisk to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Fisk's disability by offering him a reassignment to a vacant position.

266.   Such accommodation to Foster would not have caused an undue hardship on Mountain Coal.

267.   Such accommodation to Fisk would not have caused an undue hardship on Mountain Coal.

268.   Mountain Coal refused to reasonably accommodate Foster's disability pursuant to 42 U.S.C. § 12111(9).

269.   Mountain Coal refused to reasonably accommodate Fisk's disability pursuant to 42 U.S.C. § 12111(9).

270.   Mountain Coal intentionally discriminated against Foster in its failure to reasonably accommodate Foster's disability, that is the fact that Foster was a qualified person with a disability was a motivating factor in Mountain Coal's decision not to reasonably accommodate him in an employment position that he held or desired to hold with Mountain Coal.

271.   Mountain Coal intentionally discriminated against Fisk in its failure to reasonably accommodate Fisk's disability, that is the fact that Fisk was a qualified person with a disability was a motivating factor in Mountain Coal's decision not to reasonably accommodate him in an employment position that he held or desired to hold with Mountain Coal.

272.   As a direct result of Mountain Coal's intentional discrimination, Foster sustained injuries, damages and losses.

273.   As a direct result of Mountain Coal's intentional discrimination, Fisk sustained injuries, damages and losses.

**SECOND CLAIM FOR RELIEF – FOSTER AND FISK**
**AMERICANS WITH DISABILITIES ACT (Termination due to Actual Disability)**
**ADA - 42 U.S.C. §12112**
**Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions. §104A.03 & §**
**104A.09**

274.   Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

275.   Foster has a physical impairment, namely a cervical spine condition, which substantially limits one or more of his major life activities.

276.   Fisk has a physical impairment, namely a lower leg injury, which substantially limits one or more of his major life activities.

277.   Foster is an individual with a disability, pursuant to the ADA, 42 U.S.C. §12102(2).

278.   Fisk is an individual with a disability, pursuant to the ADA, 42 U.S.C. §12102(2).

279.   Pursuant to 42 U.S.C. § 12111(8), Foster is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold or desires to hold with Mountain Coal.

280.   Pursuant to 42 U.S.C. § 12111(8), Fisk is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold or desires to hold with Mountain Coal.

281.   Mountain Coal could have reasonably accommodated Foster's disability by making modifications to the work place which would have allowed a person with a disability such as Foster to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Foster's disability by offering him a reassignment to a vacant position.

282.   Mountain Coal could have reasonably accommodated Fisk's disability by making modifications to the work place which would have allowed a person with a disability such as Fisk to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Fisk's disability by offering him a reassignment to a vacant position.

283.   Such accommodation to Foster would not have caused an undue hardship on Mountain Coal.

284.   Such accommodation to Fisk would not have caused an undue hardship on Mountain Coal.

285.   Mountain Coal refused to reasonably accommodate Foster's disability pursuant to 42 U.S.C. § 12111(9).

286.   Mountain Coal refused to reasonably accommodate Fisk's disability pursuant to 42 U.S.C. § 12111(9).

287.   Mountain Coal discharged Foster rather than reasonably accommodating him because of his disability.

288.   Mountain Coal discharged Fisk rather than reasonably accommodating him because of his disability.

289.   Mountain Coal wrongfully discharged Foster, that is the fact that Foster was a qualified person with a disability was a motivating factor in Mountain Coal's decision to discharge Foster.

290.   Mountain Coal wrongfully discharged Fisk, that is the fact that Fisk was a qualified person with a disability was a motivating factor in Mountain Coal's decision to discharge Fisk.

291.   As a direct result of Mountain Coal's wrongful discharge, Foster sustained injuries, damages and losses.

292.   As a direct result of Mountain Coal's wrongful discharge, Fisk sustained injuries, damages and losses.

## THIRD CLAIM FOR RELIEF – FOSTER AND FISK
## AMERICANS WITH DISABILITIES ACT (Termination due to Perceived Disability)
## ADA - 42 U.S.C. §12112
## Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions. §104A.03 & § 104A.09

293.   Plaintiffs incorporate by reference each and every paragraph of this Complaint.

294.   Foster has a physical impairment, namely a cervical spine condition, which substantially limits one or more of his major life activities.

295.   Fisk has a physical impairment, namely a lower leg injury, which substantially limits one or more of his major life activities.

296.   Foster was regarded by Mountain Coal, his employer, as having a physical impairment that substantially limits one or more major life activities.

24

297.     Fisk was regarded by Mountain Coal, his employer, as having a physical impairment that substantially limits one or more major life activities.

298.     Foster is an individual with a disability, pursuant to the ADA, 42 U.S.C. § 12102(2), since he was regarded by Mountain Coal as having a physical impairment that substantially limits one or more major life activities.

299.     Fisk is an individual with a disability, pursuant to the ADA, 42 U.S.C. § 12102(2), since he was regarded by Mountain Coal as having a physical impairment that substantially limits one or more major life activities.

300.     Pursuant to 42 U.S.C. § 12111(8), Foster is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold with Mountain Coal.

301.     Pursuant to 42 U.S.C. § 12111(8), Fisk is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold with Mountain Coal.

302.     Mountain Coal could have reasonably accommodated Foster's disability by making modifications to the work place which would have allowed a person with a disability such as Foster to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Foster's disability by offering him a reassignment to a vacant position.

303.     Mountain Coal could have reasonably accommodated Fisk's disability by making modifications to the work place which would have allowed a person with a disability such as Fisk to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Fisk's disability by offering him a reassignment to a vacant position.

304.     Such accommodation to Foster would not have caused an undue hardship on Mountain Coal.

305.     Such accommodation to Fisk would not have caused an undue hardship on Mountain Coal.

306.   Mountain Coal refused to reasonably accommodate  Foster's disability  pursuant to 42 U.S.C.  § 12111(9).

307.   Mountain  Coal  refused to reasonably accommodate  Fisk's disability  pursuant to 42 U.S.C.  § 12111(9).

308.   Mountain Coal discharged Foster rather than reasonably accommodating him because of his disability.

309.   Mountain Coal discharged Fisk rather than reasonably accommodating him because of his disability.

310.   Mountain Coal wrongfully discharged Foster, that is the fact that Foster was a qualified person with a disability was a motivating factor in Mountain Coal's decision to discharge Foster.

311.   Mountain Coal wrongfully discharged Fisk, that is the fact that Fisk was a qualified person with a disability was a motivating factor in Mountain Coal's decision to discharge Fisk.

312.   As a direct result of Mountain Coal's wrongful discharge,  Foster sustained injuries, damages and losses.

313.   As a direct result of Mountain Coal's wrongful  discharge, Fisk sustained injuries, damages and losses.

### FOURTH CLAIM FOR RELIEF – FOSTER AND FISK
### AMERICANS  WITH DISABILITIES ACT (Failure to Accommodate  and Wrongful Discharge Based Upon Employer's Retaliation and Coercion Against an Employee For Exercising a Specific Statutory Right or Public Duty- Americans With Disabilities Act) ADA - 42 U.S.C. §12203
### Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions. §104A.03

314.   Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

315.   Foster made a request for reasonable accommodation.

316.   Fisk made a request for reasonable accommodation.

26

317.    Foster made a charge of discrimination pursuant to the ADA, 42 USC§ 12101, *et. seq.*

318.    Fisk made a charge of discrimination pursuant to the ADA, 42 USC§ 12101, *et. seq.*

319.    Mountain Coal retaliated against Foster, in that a motivating factor in Mountain Coal's decision to refuse to reasonably accommodate Foster's employment, to discharge Foster, to refuse to reassign Foster to a vacant position, and otherwise to discriminate against Foster in the terms and conditions of his employment with Mountain Coal, was the fact that Foster exercised his statutory right or duty in seeking reasonable accommodation and/or made a charge of discrimination under the ADA, 42 USC§ 12101, *et. seq.*

320.    Mountain Coal retaliated against Fisk, in that a motivating factor in Mountain Coal's decision to refuse to reasonably accommodate Fisk's employment, to discharge Fisk, to refuse to reassign Fisk to a vacant position, and otherwise to discriminate against Fisk in the terms and conditions of his employment with Mountain Coal, was the fact that Fisk exercised his statutory right or duty in seeking reasonable accommodation and/or made a charge of discrimination under the ADA, 42 USC§ 12101, *et. seq.*

321.    As a direct result of Mountain Coal's retaliation, Foster sustained injuries, damages and losses.

322.    As a direct result of Mountain Coal's retaliation, Fisk sustained injuries, damages and losses.

### FIFTH CLAIM FOR RELIEF – FOSTER AND FISK
### CLAIM FOR RELIEF
### DISCRIMINATION BASED ON ACTUAL OR PERCEIVED DISABILITY
### Section 24-34-402, C.R.S.

323.    Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

324.    Foster has a physical impairment, namely a cervical spine condition, which substantially limits one or more of his major life activities.

325.    Fisk has a physical impairment, namely a lower leg injury, which substantially limits one or more of his major life activities.

27

326.   Foster was regarded by Mountain Coal, his employer, as having a physical impairment that substantially limits one or more major life activities.

327.   Fisk was regarded by Mountain Coal, his employer, as having a physical impairment that substantially limits one or more major life activities.

328.   Foster is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold with Mountain Coal.

329.   Fisk is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential job functions of an employment position that he held or desired to hold with Mountain Coal.

330.   Foster was qualified for his job or would have been qualified with reasonable accommodations.

331.   Fisk was qualified for his job or would have been qualified with reasonable accommodations.

332.   Mountain Coal could have reasonably accommodated Foster's disability by making modifications to the work place which would have allowed a person with a disability such as Foster to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Foster's disability by offering him a reassignment to a vacant position.

333.   Mountain Coal could have reasonably accommodated Fisk's disability by making modifications to the work place which would have allowed a person with a disability such as Fisk to perform the essential functions of an employment position that he held or desired to hold with Mountain Coal, or which would have allowed a person with such a disability to enjoy the same benefits and privileges as an employee without a disability, or Mountain Coal could have reasonably accommodated Fisk's disability by offering him a reassignment to a vacant position.

334.   Such accommodation to Foster would not have caused an undue hardship on Mountain Coal.

335.   Such accommodation to Fisk would not have caused an undue hardship on Mountain Coal.

336.    Mountain Coal refused to reasonably accommodate Foster's disability.

337.    Mountain Coal refused to reasonably accommodate Fisk's disability.

338.    Mountain Coal discharged Foster rather than reasonably accommodating him because of his disability.

339.    Mountain Coal discharged Fisk rather than reasonably accommodating him because of his disability.

340.    Mountain Coal wrongfully discharged Foster, that is the fact that Foster was a qualified person with a disability was a motivating factor in Mountain Coal's decision to discharge Foster.

341.    Mountain Coal wrongfully discharged Fisk, that is the fact that Fisk was a qualified person with a disability was a motivating factor in Mountain Coal's decision to discharge Fisk.

342.    As a direct result of Mountain Coal's wrongful discharge, Foster sustained injuries, damages and losses.

343.    As a direct result of Mountain Coal's wrongful discharge, Fisk sustained injuries, damages and losses.

## SIXTH CLAIM FOR RELIEF – FISK ONLY
## AGE DISCRIMINATION IN EMPLOYMENT ACT
### Age Discrimination in Employment Act, 29 U.S.C. 621 *et seq.*

344.    Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

345.    Fisk is in the protected age group, that is, greater than 40 years of age.

346.    Fisk was qualified for his position with Mountain Coal.

347.    Fisk's job performance met the expectations of Mountain Coal.

348.    Mountain Coal gave Fisk negative reviews and/or discipline because of his age.

29

349.   Fisk was discharged from his position and otherwise discriminated against by Mountain Coal because of his age.

350.   Fisk's age was a motivating factor in these actions, that is, it was one of the reasons that prompted Mountain Coal to give him negative reviews and/or discipline.

351.   Fisk's age was a motivating factor in these actions, that is, it was one of the reasons that prompted Mountain Coal to terminate him.

352.   Fisk's age was the predominant factor that prompted Mountain Coal to give him negative reviews and/or discipline.

353.   Fisk's age was the predominant factor that prompted Mountain Coal to terminate him.

354.   Mountain Coal's actions constitute a violation of the ADEA.

355.   As a result of Mountain Coal's violation of the ADEA, Fisk suffered injuries, damages, and losses.

**SEVENTH CLAIM FOR RELIEF – FISK ONLY**
**AGE DISCRIMINATION**
**Section 24-34-402, C.R.S.**

356.   Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

357.   Fisk is in the protected age group, that is, greater than 40 years of age.

358.   Fisk was qualified for his position with Mountain Coal.

359.   Fisk's job performance met the expectations of Mountain Coal.

360.   Mountain Coal gave Fisk negative reviews and/or discipline because of his age.

361.   Fisk was discharged from his position and otherwise discriminated against by Mountain Coal because of his age.

362.   Fisk's age was a motivating factor in these actions, that is, it was one of the reasons that prompted Mountain Coal to give him negative reviews and/or discipline.

363.   Fisk's age was a motivating factor in these actions, that is, it was one of the

reasons that prompted Mountain Coal to terminate him.

364.    Mountain Coal's actions constitute a violation of the Colorado Anti-Discrimination Act.

365.    As a result of Mountain Coal's violation of the Colorado Anti-Discrimination Act, Fisk suffered injuries, damages, and losses.

**EIGHTH CLAIM FOR RELIEF – FISK ONLY**
**WRONGFUL DISCHARGE BASED ON RETALIATION FOR EXERCISING A**
**SPECIFIC STATUTORY RIGHT**
**OR PUBLIC DUTY – WORKERS' COMPENSATION CLAIM**
***Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992)**
**CJI-Civ. 30:10 (2012 ed.)**

366.    Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

367.    Foster was employed by Mountain Coal.

368.    Fisk was employed by Mountain Coal.

369.    Mountain Coal discharged Foster.

370.    Mountain Coal discharged Fisk.

371.    Mountain Coal discharged Foster because he filed a workers' compensation claim pursuant to the Colorado Workers' Compensation Act, section 8-40-101, C.R.S. *et seq.*

372.    Mountain Coal discharged Fisk because he filed a workers' compensation claim pursuant to the Colorado Workers' Compensation Act, section 8-40-101, C.R.S. *et seq.*

373.    Foster incurred injuries, damages, and losses as a result of Mountain Coal discharging him for filing a claim for workers' compensation benefits.

374.    Fisk incurred injuries, damages, and losses as a result of Mountain Coal discharging him for filing a claim for workers' compensation benefits.

## NINTH CLAIM FOR RELIEF – FISK ONLY
## DECLARATORY JUDGMENT REGARDING VALIDITY OF SEVERANCE
## AGREEMENT
## 28 U.S.C. §2201
## FED. R. CIV. P. 57

375.     Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

376.     Upon termination, Fisk signed a document entitled "Severance Agreement and Release of All Claims" (the "severance agreement") provided to him by Mountain Coal.

377.     The severance agreement purports to release Fisk's claims against Mountain Coal for, among other things, violation of the Americans with Disabilities Act, the Age Discrimination in Employment Act, and related Colorado state law claims for disability and age discrimination.

378.     Fisk seeks a determination from the court as to the validity of the severance agreement.

379.     The severance agreement is a contract.

380.     There is a current and justiciable dispute that this court can resolve.

381.     Fisk is entitled to and seeks an order declaring that the severance agreement is invalid and does not waive his claims under the Americans with Disabilities Act, the Age Discrimination in Employment Act, and/or his related Colorado state law claims for disability and age discrimination.

## DAMAGES FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Back Pay Damages)
## ADA – 42 U.S.C.A.§ 12111(10) 29 C.P.R. § 1630.2 (p)
### Devitt. Blackmar & Wolff
### Federal Jury Practice and Instructions. § 104A.11

382.     Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

383.     Mountain Coal's intentional discrimination and retaliation in violation of the ADA entitles Foster to an award of back pay and interest he would have been entitled to had he continued as an employee of Mountain Coal until the last day of trial.

384.    Mountain Coal's intentional discrimination and retaliation in violation of the ADA entitles Fisk to an award of back pay and interest he would have been entitled to had he continued as an employee of Mountain Coal until the last day of trial.

## DAMAGES FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Reinstatement or Front Pay Damages) ADA – 42 U.S.C.A.§ 12111(10)
### 29 C.P.R. § 1630.2 (p)
### Devitt. Blackmar & Wolff
### Federal Jury Practice and Instructions, § 104A.11

385.    Plaintiffs incorporate by reference each and every paragraph of this Complaint.

386.    Mountain Coal's intentional discrimination and retaliation in violation of the ADA entitles Foster to an award of reinstatement or damages for front pay.

387.    The evidence will indicate that reinstatement may be inappropriate due to the hostile work environment created by Mountain Coal's intentional discrimination and retaliation and therefore, Foster would be entitled to payment for his future loss of earnings (front pay).

388.    Mountain Coal's intentional discrimination and retaliation in violation of the ADA entitles Fisk to an award of reinstatement or damages for front pay.

389.    The evidence will indicate that reinstatement may be inappropriate due to the hostile work environment created by Mountain Coal's intentional discrimination and retaliation and therefore, Fisk would be entitled to payment for his future loss of earnings (front pay).

## DAMAGES FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Compensatory Damages) 42 U.S.C.A.§ 12111(10)
### 29 C.F.R. § 1630.2 (p)
### Devitt, Blackmar & Wolff
### Federal Jury Practice and Instructions. § 104A.11

390.    Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

391.    Mountain Coal's intentional discrimination and retaliation in violation of the ADA entitles Foster to an award of damages for back pay, future pecuniary losses, emotional pain and suffering, inconvenience and mental anguish.

33

392.   Mountain Coal's intentional discrimination and retaliation in violation of the ADA entitles Fisk to an award of damages for back pay, future pecuniary losses, emotional pain and suffering, inconvenience and mental anguish.

## DAMAGES FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Punitive Damages) Devitt. Blackmar & Wolff
### Federal Jury Practice and Instructions., § 104A 12

393.   Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

394.   Defendant Mountain Coal engaged in discriminatory practice or practices by intentionally discriminating and retaliating against Foster in violation of the ADA with malice or reckless indifference to the rights of Foster to be free from such intentional discrimination and retaliation.

395.   Defendant Mountain Coal engaged in discriminatory practice or practices by intentionally discriminating and retaliating against Fisk in violation of the ADA with malice or reckless indifference to the rights of Fisk to be free from such intentional discrimination and retaliation.

396.   Foster is entitled to punitive damages to punish Mountain Coal for its misconduct and to warn others against doing the same.

397.   Fisk is entitled to punitive damages to punish Mountain Coal for its misconduct and to warn others against doing the same.

## ATTORNEYS' FEES AND COSTS PURSUANT TO AMERICANS WITH
### DISABILITIES ACT
### ADA- 42 U.S.C. § 12205

398.   Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

399.   42 U.S.C. § 12205 states, in part: "In any action or administrative proceeding commenced pursuant to this act, the court or agency, in its discretion, may allow a prevailing party . . . a reasonable attorney's fee including litigation expenses, and costs . . . ."

400.   Foster incurred a reasonable attorney's fee and costs in pursuing this action in an administrative agency and will continue to incur reasonable attorney's fees and costs in this civil action.

401.    Foster's reasonable attorneys' fee and costs have been and will be incurred as a result Mountain Coal's violation of 42 U.S.C. § 12101, *et seq.*

402.    Fisk incurred a reasonable attorney's fee and costs in pursuing this action in an administrative agency and will continue to incur reasonable attorney's fees and costs in this civil action.

403.    Fisk's reasonable attorneys' fee and costs have been and will be incurred as a result Mountain Coal's violation of 42 U.S.C. § 12101, *et seq.*

## DAMAGES FOR VIOLATION OF THE ADEA
### (Back Pay Damages)
### *Villescas v. Abraham*, 285 F. Supp. 2d 1248 (D. Colo. 2003)

404.    Plaintiffs incorporate by this reference each and every paragraph of this Complaint.

405.    Mountain Coal's intentional discrimination in violation of the ADEA entitles Fisk to an award of back pay and interest she would have been entitled to had he continued as an employee of Mountain Coal until the last date of trial.

## DAMAGES FOR VIOLATION OF THE ADEA
### (Reinstatement or Front Pay Damages)
### *Acrev v. American Sheep Indus. Ass'n*, 981 F.2d 1569 (10th Cir. 1984)

406.    Fisk incorporates by reference each and every paragraph of this complaint.

407.    Mountain Coal's intentional discrimination in violation of the ADEA entitles Fisk to an award of reinstatement or damages for front pay.

408.    The evidence will indicate that reinstatement may be inappropriate due to the hostile work environment created by the intentional discrimination and therefore, Fisk would be entitled to payment for his future loss of earnings (front pay).

## DAMAGES FOR VIOLATION OF THE ADEA
### (Liquidated Damages)
### *Trans World Air Lines, Inc. v. Thurston*, 469 U.S. 111 (1985)

409.    Fisk incorporates by reference each and every paragraph of this complaint.

410.    Mountain Coal willfully violated the ADEA in that Mountain Coal knew or showed reckless disregard that its conduct was prohibited by the ADEA

411.   Mountain Coal's willful violation of the ADEA entitles Fisk to double damages as liquidated damages.

## ATTORNEY'S FEES AND COSTS PURSUANT TO
### ADEA 29 USC § 626 (b)

412.   Fisk incorporates each and every paragraph in this Complaint.

413.   The ADEA 29 USC § 626 (b) states in part: "the provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in . . . § 216 (except for subsection (a) thereof), and 217 of this title 29 and subsection (c) of this section."

414.   29 USC § 216 (b) states in part: "the court . . . shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorneys fee to be paid by the Mountain Coal and costs of the action."

415.   Fisk incurred a reasonable attorneys' fee and costs in pursuing this action in an administrative agency and will continue to incur reasonable attorneys' fees and costs in this civil action.

416.   Fisk's reasonable attorneys' fees and costs have been and will be incurred as a result of Mountain Coals' violation of the ADEA.

## DAMAGES FOR VIOLATION OF COLORADO LAW
### Economic and Non-Economic Damages for Violation of State Law
### C.J.I. Civ. 4th§§ 31:4 and 31:10

417.   Plaintiffs incorporate by reference each and every paragraph of this Complaint.

418.   Mountain Coal's violation of the above state laws as alleged in the above state claims of this Complaint caused Foster to incur past and future non-economic injuries, damages, and losses, including but not limited to pain and suffering, inconvenience, emotional distress, and impairment of the quality of life.

419.   Mountain Coal's violation of the above state laws as alleged in the above claims of this Complaint caused Foster to incur past and future economic injuries, damages, and losses, which include but are not limited to loss of earnings, attorneys' fees, costs of litigation and other expenses.

36

420.   Mountain Coal's violation of the above state laws as alleged in the above state claims of this Complaint caused Fisk to incur past and future non-economic injuries, damages, and losses, including but not limited to pain and suffering, inconvenience, emotional distress, and impairment of the quality of life.

421.   Mountain Coal's violation of the above state laws as alleged in the above claims of this Complaint caused Fisk to incur past and future economic injuries, damages, and losses, which include but are not limited to loss of earnings, attorneys' fees, costs of litigation and other expenses.

## PUNITIVE DAMAGES ON STATE LAW CLAIMS
## § 13-21-102, C.R.S.

422.   Plaintiffs incorporate by reference each and every paragraph of this Complaint.

423.   Mountain Coal's conduct toward Foster that resulted in violations of state law, as alleged in the above state law claims, was fraudulent, malicious, and willful and wanton.

424.   Mountain Coal's conduct toward Fisk that resulted in violations of state law, as alleged in the above state law claims, was fraudulent, malicious, and willful and wanton.

425.   Mountain Coal's fraudulent, malicious, and willful and wanton conduct towards Foster entitles him to an award of punitive damages sufficient to punish Mountain Coal and to deter others from acting the same.

426.   Mountain Coal's fraudulent, malicious, and willful and wanton conduct towards Fisk entitles him to an award of punitive damages sufficient to punish Mountain Coal and to deter others from acting the same.

WHEREFORE, plaintiffs respectfully request:

A       Judgment to be entered against Mountain Coal for monetary injuries, damages and losses in an amount to be proven at trial;

B.      Pre-judgment and post-judgment interest;

C.      Costs of litigation, including expert witness fees;

D.      Reasonable attorneys' fees;

37

E.      Exemplary/punitive damages;

F.      An order that the severance agreement signed by Fisk is invalid and does not
        waive his claims under the Americans with Disabilities Act, the Age
        Discrimination in Employment Act, and/or his related Colorado state law claims
        for disability and age discrimination.; and

G.      Such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

DATED this 26th day of December, 2012.

                                        KILLIAN DAVIS
                                        Richter & Mayle, PC


                                        */s/ J. Keith Killian*
                                        J. Keith Killian, Esq.
                                        **Attorneys for Plaintiff**
                                        202 North 7th Street
                                        Post Office Box 4859
                                        Grand Junction, CO 81502
                                        Phone: (970) 241-0707
                                        Fax: (970) 242-8375
                                        keith@killianlaw.com