IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 12-cv-03341-LTB-MJW

EUGENE FOSTER and
ROBERT FISK,

       Plaintiffs,

v.

MOUNTAIN COAL COMPANY, LLC,
ARCH WESTERN RESOURCES, LLC, and
ARCH COAL, INC.,

       Defendants.

_____

ORDER
_____

      This employment discrimination lawsuit is before me on Defendants' Motion for

Summary Judgment as to Eugene Foster [Doc. # 82].  Mr. Foster seeks damages from his former

employer, Mountain Coal Company, LLC and its affiliates Arch Western Resources, LLC and

Arch Coal, Inc. under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*,

and the Colorado Anti-Discrimination Act (CADA), Colo. Rev. Stat. § 24-34-401, *et seq.*  Mr.

Foster's claims arise out of his termination from Mountain Coal in April 2008 following a

cervical spine injury.  I have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Oral

argument would not materially assist me in determining this motion.

      As explained below, I GRANT the motion.  Mr. Foster's wrongful termination and

failure to accommodate claims fail because no reasonable jury could find that he was able to

perform the "essential functions" of his job with or without reasonable accommodation; that he

adequately requested his desired accommodations before he was terminated; or that his requested transfer to a maintenance planning position was a reasonable accommodation. Mr. Foster also asserts several variations of an ADA retaliation claim, each of which fails either because Mr. Foster cannot show that he made a protected request for accommodation or because he cannot show that the company took a materially adverse action against him because of such a request.

Because these rulings dispose of all remaining claims, I do not reach the parties' other arguments, including Defendants' argument that Mr. Foster is estopped from claiming he can perform the essential functions of his job because he obtained Social Security Disability Insurance benefits on the premise that he is disabled.

## I. Facts

The following facts are undisputed for purposes of Defendants' motion unless otherwise noted. Mr. Foster began working for Mountain Coal in November 2002. Am. Compl. ¶ 66 [Doc. # 12]. His title was Longwall Maintenance Supervisor. *Id.* ¶ 67. On February 5, 2008, he injured his neck while working in the West Elk Mine in Gunnison County, Colorado. *Id.* ¶¶ 1, 70. He went to the emergency room (ER) the next day, where he was told he chipped a bone fragment off of a cervical vertebrae. *Id.* ¶ 82. The ER doctor wrote him a work release slip excusing him from work from February 6 to 8. *Id.* ¶ 84. On February 10, he gave the release to a manager at the mine, Ed Langrand, who told him that the release would not suffice because it needed to be on a Mountain Coal form. *Id.* ¶¶ 96-113. Mountain Coal maintains that it "requires all employees to have a Mountain Coal Return-to-Work form completed before they can return to work" and that "Mr. Foster knew this was the policy." Mot. at 5-6 [Doc. # 82].

From February 15 to March 28, 2008, Mr. Foster was on previously scheduled leave from

2

work to have hernia surgery.  Am. Compl. ¶¶ 87-95 [Doc. # 12]; Mot. at 5 [Doc. # 82].  Towards

the end of February, Mr. Foster claims his family doctor, Dr. Funk, completed the Mountain

Coal Return-to-Work form that Mr. Langrand requested with respect to the February 5 neck

injury after ER staff declined to complete it.  Foster Dep. at 78-82 [Doc. # 82-1].  Mr. Foster

claims he went "straight to the mines" to drop off the completed form.  *Id.* at 83.  He says he did

not see anyone he recognized at the office, so he left the form on the desk of Sandy White, who

handled human resources matters.  *Id.* at 83-84.  On March 13, Mr. Foster spoke by phone with

Ms. White.  *Id.* at 91-94.  She said she never received the form and asked him to get another.  *Id.*

at 94.

On March 18, Mr. Foster says he got another completed Return-to-Work form from Dr.

Funk.  *Id.* at 94-97.  On March 19, he delivered it to the mine and met with Mr. Langrand and

other members of management.  *Id.* at 96-99.  Mr. Langrand reiterated that no one in human

resources had seen the first form that Mr. Foster claimed he left on Ms. White's desk.  *Id.* at

102-03.  After the March 19 meeting, Mountain Coal contacted Dr. Funk's office and was

advised that Dr. Funk had never signed an earlier Mountain Coal Return-to-Work form.

Langrand Dep. at 84-86 [Doc. # 82-10]; North Fork Medical Clinic Progress Notes [Doc. # 82-

15].

Mr. Foster returned from his leave for hernia surgery around the end of March 2008.

Foster Dep. at 107 [Doc. # 82-1].  On April 3, Mr. Foster met again with management, including

maintenance superintendent Kevin Jensen and general manager Jim Miller.  *Id.* at 108-09.  Mr.

Jensen recalls that the "missing Return-to-Work form" and the call to Dr. Funk's office were

discussed; Mr. Miller accused Mr. Foster of lying about providing the earlier note and explained

to him that he had put the company in a "precarious situation."  Jensen Dep. at 114-15 [Doc. #

82-17].  Mr. Foster's testimony is less clear.  He equivocated about whether the "missing"

Return-to-Work form was discussed at all.  He did recall, however, that management raised a

concern with respect to the version of the Return-to-Work form that everyone agrees Mountain

Coal did receive: the fact that Dr. Funk signed it even though ER doctors had treated his injury.

Foster Dep. at 107-112 [Doc. # 82-1].  In addition, Mr. Foster recalled telling management that

he "had an appointment with the doctor to schedule surgery" the next day.  *Id.* at 110.  He

testified that "[a]ll I asked was a little cooperation."  *Id.* at 111.  Mountain Coal put Mr. Foster

"on suspension pending investigation" at the conclusion of the meeting.  *Id.* at 113.

After the meeting, Mountain Coal again contacted Dr. Funk's office and was told that the

only Return-to-Work form in Mr. Foster's patient file was dated March 18 and that if Dr. Funk

had filled out any other form, a copy would have been placed in the file.  Linnell Dep. at 21-23

[Doc. # 82-19].  Meanwhile, Mr. Foster saw doctors for his neck injury.  On April 4, Mr. Foster

saw Dr. Dwyer of Western Slope Orthopaedics.  Mr. Foster reported "significant aggravation of

his symptoms with his work in the coal mine."  Progress Note at 1 [Doc. # 82-23].  Dr. Dwyer

noted that he did not think "surgical intervention is in the patient's best interest."  *Id.*  He noted

that while a "1 or 2 level cervical spine surgery" could "address the levels of nerve root

compression," Mr. Foster "may never see significant improvement in his symptoms if [he] were

to continue to do the physically demanding occupation that he currently does in coal mining."

*Id.*

On April 9, 2008, Mountain Coal claims it terminated Mr. Foster's employment.  Mr.

Langrand testified that Mountain Coal "decided to terminate [Mr. Foster] on the 9th, and he was

4

called on the 9th," but he did not pick up his phone.  Langrand Dep. at 126 [Doc. # 82-10].  Mr. Jensen testified that he, Mr. Miller, and Mr. Langrand were the only ones involved in making the termination decision.  Jensen Dep. at 68 [Doc. # 82-17].  Mr. Kunde, who was Mr. Foster's supervisor, testified that he was not involved in making the decision to fire Mr. Foster.  Kunde Dep. at 63 [Doc. # 82-25].  On April 11, Mr. Langrand sent a letter to Mr. Foster stating that the company had terminated his employment "effective April 9" because he "gave false information as to a credible Return To Work Slip."  Langrand Letter of 4/11/08 [Doc. # 82-21].  Mr. Foster received the letter on April 14.  Foster Dep. at 113-14 [Doc. # 82-1].

Also on April 11, Dr. Funk wrote a letter addressed "To Whom It May Concern," which stated that Mr. Foster "[i]s currently undergoing evaluation[,] will probably have surgery for severe cervical spine degenerative joint disease [and] should not return to his usual occupation until this medical issue is resolved."  Funk Letter of 4/11/08 [Doc. # 82-22].  Mr. Foster testified that he picked up the letter from Dr. Funk's office at 9:30 or 10:00 a.m. on April 11 and read it to Mr. Kunde over the phone 30 minutes later.  Foster Dep. at 305-09 [Doc. # 93-7].  Mr. Foster testified that Mr. Kunde "didn't know about" Mr. Foster's termination during the call and that he would be "the first to know" if Mr. Foster had already been fired because "[t]hat's just the way management works."  Foster Dep. at 116-17 [Doc. # 82-1].

Mr. Foster acknowledged, however, that he did not actually know who made the termination decision in his case.  *Id.*  During the call, Mr. Kunde told Mr. Foster that he was not "in the loop" and "didn't even know [Mr. Foster] was suspended."  *Id.*  And Mr. Foster told Mr. Kunde that Mr. Miller had tried to call him on April 10 but he missed the call.  Kunde Dep. at 70 [Doc. # 82-25].  Mountain Coal contends that the individuals who made the decision to terminate

5

Mr. Foster—Mr. Langrand, Mr. Miller, and Mr. Jensen—were unaware of the letter from Dr.

Funk when they decided to terminate Mr. Foster on April 9.  Jensen Dep. at 120 [Doc. # 82-17];

*see also* Langrand Dep. at 109-110 [Doc. # 82-10]; Miller Dep. at 69 [Doc. # 82-12].

Mr. Foster has been unemployed since he was terminated from Mountain Coal.

Langrand Dep. at 33 [Doc. # 82-41].  After his termination, Mr. Foster sought and was awarded

Social Security Disability Insurance (SSDI) benefits for his neck problems as well as his back

problems. SSDI Decision at 3 [Doc. # 82-27].  He initially alleged that he "became unable to

work because of my disabling condition on April 9, 2008" but later amended that date to June 1,

2010.  Application Summary for Disability Ins. Benefits [Doc. # 82-30]; Amended Disability

Onset Date Form [Doc. # 82-35].  The administrative law judge concluded that Mr. Foster "has

been disabled under sections 216(i) and 223(d) of the Social Security Act since June 1, 2010."

SSDI Decision at 6 [Doc. # 82-27].

In the instant lawsuit, Mr. Foster brings failure to accommodate, wrongful termination,

and retaliation claims under the ADA.  *See* Am. Compl. at 19, 21, 23, 25-26 [Doc # 12].  Mr.

Foster also brings a claim under the CADA alleging both failure to accommodate and wrongful

termination.  I previously granted summary judgment [Doc. # 77] to Defendants on the claims of

the other plaintiff in this lawsuit, Robert Fisk, on grounds different than those presented in the

motion at bar.

## II.  Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The movant has the initial responsibility of identifying for the Court "particular

parts of materials in the record"—including, for example, depositions, documents, declarations, and interrogatory answers—that it believes show the absence of genuine issues of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);  *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once the movant has done so, the non-movant may not rest on the allegations contained in his complaint, but must  "respond with specific facts showing the existence of a genuine factual issue to be tried." *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) (internal citation omitted); Fed. R. Civ. P. 56 (c) & (e).

If a reasonable jury could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The operative inquiry is whether, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.  *Id.* at 252; *Mares*, 971 F.2d at 494. "Unsubstantiated allegations," however, "carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n. 3 (10th Cir. 1992).  Similarly, "[i]nferences supported by conjecture or speculation will not defeat a motion for summary judgment." *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006).

## III.  Analysis

**A.  Wrongful Termination and Failure to Accommodate Claims Under ADA**

### 1.  Governing Law

The ADA provides that no "covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112.  Claims of discrimination under this provision can take various forms, but in general a plaintiff's prima facie case requires proof that: (1) the plaintiff is disabled, or perceived as disabled, as defined by the ADA; (2) the plaintiff is a "qualified individual," meaning that "he is qualified to perform the essential functions of his job with or without reasonable accommodation"; and (3) the plaintiff suffered discrimination as a result of his disability.  *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).  There are more specific formulations of the third element for wrongful termination and failure to accommodate claims.  *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.3 (10th Cir. 2004).  They need not be discussed here, however, because Defendants contest only the second element: whether Mr. Foster can perform the essential functions of his job with or without reasonable accommodation.  Further, Mr. Foster does not contend he could perform the essential functions of his job without reasonable accommodation.  Thus, the issue before the Court is whether Mr. Foster could perform the essential functions of his job with reasonable accommodation.

### a.  Burden to Request Accommodation as Prerequisite to Suit

"The plaintiff bears the burden of showing [he] is able to perform the essential functions of [his] job."  *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004); *Koessel*, 717 F.3d at 743.  Where the plaintiff claims he can perform the essential functions of his job, but only with accommodation, he has the further burden of proving "as a precondition to suit" that he "request[ed] accommodation," "unless the employer has 'foreclosed the interactive process through its policies or explicit actions.'"  *Koessel*, 717 F.3d at 744 (quoting *Davoll v. Webb*, 194

F.3d 1116, 1133 (10th Cir. 1999)).   Plaintiff disputes that this requirement applies to wrongful termination claims.   The Tenth Circuit, however, has held that the plaintiff's failure to request accommodation prevented him from being deemed "qualified" on the basis of that accommodation in a case in which the only ADA claim was for wrongful termination.   *Koessel*, 717 F.3d at 742, 744-45.   The court explained that it "is not the employer's responsibility to anticipate the employee's needs and affirmatively offer accommodation if the employer is otherwise open to such requests."   *Id.* at 745.

Mr. Foster does not address this holding, but instead relies on *Bartee*, 374 F.3d 906.   That opinion does not address whether a plaintiff who argues he has been wrongfully terminated because he could perform the essential functions of his job with accommodation—but not without—must prove he requested the accommodation that he requires.   Indeed, it appears the court did not analyze that issue because the plaintiff properly requested accommodation.   *Id.* at 910 (noting plaintiff's "letter requesting reasonable accommodation").   Because *Koessel* addresses this specific issue, I conclude it is controlling and Mr. Foster must show he requested, before he was terminated, any accommodations upon which he now relies to establish that he is a qualified individual.   *Cf. Purvis v. Texas A&M Univ.*, No. CIV.A G-1O-520, 2014 WL 4851903, at *4 n.14 (S.D. Tex. Sept. 29, 2014) (noting with regard to Rehabilitation Act that "when the individual fails to request an accommodation, he will no longer be considered a qualified individual with a disability and liability will not result") (internal citation omitted); *White v. York Int'l Corp.*, 45 F.3d 357, 360 n.5 (10th Cir. 1995) ("[W]e rely on case law interpreting the Rehabilitation Act's 'otherwise qualified' requirement in determining whether [the plaintiff] was 'qualified' under the ADA.").

### b.  Burden to Make Direct and Specific Request for Accommodation

Requests for accommodation must be "sufficiently direct and specific." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1141 (10th Cir. 2013) *cert. granted*, 135 S. Ct. 44 (2014); *Dinse v. Carlisle Foodservice Products Inc.*, 541 F. App'x 885, 890 (10th Cir. 2013) ("An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice *of the needed accommodation*.") (internal citation omitted; emphasis in original).  An employee "cannot expect the employer to read [his] mind and know [he] secretly wanted a particular accommodation and [then] sue the employer for not providing it." *Id.* at 890 n.4 (internal quotations and citation omitted).  In other words, a plaintiff cannot bring a lawsuit claiming he is qualified based on an accommodation other than the accommodation he actually requested from his employer.  *See also Koessel,* 717 F.3d at 744 (plaintiff could not be deemed qualified based on accommodation of modified job duties where he did not request this particular "type of accommodation").  Once an employee provides "appropriate notice," an "interactive process" is "triggered," whereby both employer and employee are obligated to work together in good faith to determine a reasonable accommodation for the employee.  *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1171-74 (10th Cir. 1999) (en banc).

### c.  Mr. Foster's Contentions

As noted, it is the plaintiff's burden to show that he can perform the essential functions of his job.  *Mason,* 357 F.3d at 1119; *Koessel,* 717 F.3d at 743. Mr. Foster, quoting the Tenth Circuit's opinion in *Dinse,* 541 F. App'x at 889, argues that "before an individual can be deemed *not* 'otherwise qualified' [that is, not qualified] the employer must make an effort to

accommodate the employee's disability." Resp. at 20 [Doc. # 93] (emphasis in original). Mr. Foster contends this means that a plaintiff is excused from showing he can perform the essential functions of his job if his employer did not make an effort to accommodate his disability in response to a request for accommodation. Other cases, however, make clear that this is not the case. *See, e.g., Mason*, 357 F.3d at 1124 n.4 (where employee was not a qualified individual with a disability under the ADA, employer was not required to engage in the interactive process); *Smith*, 180 F.3d at 1174 (even where employer fails to fulfill interactive obligation to determine reasonable accommodation, plaintiff not entitled to recovery "unless he can also show that a reasonable accommodation was possible"). Thus, it appears that the quoted language in *Dinse* (an unpublished opinion, it should be noted), means only that determining whether an individual is qualified under the ADA requires consideration of whether an employee can perform the essential functions of his job both with and without accommodation.

### 2. Timing of Mr. Foster's Termination

As noted, Mr. Foster claims he was qualified because he was able to perform the essential functions of his job with accommodation. Specifically, Mr. Foster argues that he could have continued to perform the essential functions of the job he actually held, as a maintenance supervisor, if he had been given time off for cervical fusion surgery. Alternatively, he argues that Mountain Coal could have given him time off for the surgery or for facet joint injections and also transferred him to the less physically strenuous job of maintenance planner. I address both of these options in turn. First, however, I address the timing of Mr. Foster's termination because that issue bears on the timeliness of Mr. Foster's main alleged request for accommodation.

Mr. Foster does not dispute that any valid request for reasonable accommodation had to

occur before he was terminated.  *See Malipurathu v. Jones*, No. CIV-11-646-W, 2013 WL

3821009, at *13 (W.D. Okla. July 23, 2013) (in ADA suit against drug treatment facility, letter

from patient seeking accommodation "cannot be construed as a request for accommodations"

because it was received after patient was discharged from the facility), *aff'd*, 563 F. App'x 646

(10th Cir. 2014).  And he does not contend that Mountain Coal did anything to "foreclose the

interactive process through its policies or explicit actions," such that a failure to pursue

accommodation could be excused.  *Koessel,* 717 F.3d at 744.

Here, Mountain Coal maintains it terminated Mr. Foster on April 9, 2008, but Mr. Foster

claims he was not terminated until April 11, two days later.  The date of Mr. Foster's termination

is important because, to show he sought reasonable accommodation, Mr. Foster relies primarily

on a telephone call he says he had with his supervisor, Mr. Kunde, on April 11.  During this call

he says he read the letter from Dr. Funk stating that he "will probably have surgery for severe

cervical spine degenerative joint disease [and] should not return to his usual occupation until this

medical issue is resolved."  Funk Letter of 4/11/08 [Doc. # 82-22].

Under Colorado law, unless otherwise agreed by the parties, "employment may be

terminated lawfully by either party without reason *or notice.*"  *Young v. Dillon Companies, Inc.*,

468 F.3d 1243, 1253 (10th Cir. 2006) (emphasis added) (citing *Cont'l Air Lines, Inc. v. Keenan*,

731 P.2d 708, 711 (Colo. 1987)).  Mountain Coal's termination letter stated that Mr. Foster was

terminated "effective April 9."  Langrand Letter of 4/11/08 [Doc. # 82-21].  Mr. Langrand

testified that Mountain Coal "decided to terminate him on the 9th," and called him on the phone,

but he did not answer the calls.  Langrand Dep. at 126 [Doc. # 82-10].  And, according to Mr.

Kunde, during his call with Mr. Foster on April 11, Mr. Foster acknowledged that Mr. Miller had

12

tried to call him on April 10. Kunde Dep. at 70 [Doc. # 82-25]. All of this suggests that Mr. Foster was indeed terminated on April 9, or at least before April 11.

The only evidence Mr. Foster cites to support his argument that he was terminated on April 11 is his own deposition testimony that Mr. Kunde told him during their call on April 11 that he "didn't know about" Mr. Foster's termination, and that Mr. Kunde would be "the first to know" if Mr. Foster had already been fired because "[t]hat's just the way management works." Foster Dep. at 116-17 [Doc. # 82-1]. In his brief, Mr. Foster also asserts that as a "long time supervisor at Mountain Coal he would know the routine practice," although he does not identify any evidence supporting this assertion. Resp. at 11 n.7 [Doc. # 93]. Defendants contend that Mr. Foster has not shown that he has personal knowledge or otherwise laid a foundation for his testimony regarding Mountain Coal's practices with respect to terminations. I agree. *See* Advisory Committee Notes to Fed. R. Civ. P. 56(c)(2) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (court did not abuse its discretion in disregarding portion of affidavit not based on personal knowledge in ruling on summary judgment motion); *Wakefield Kennedy LLC v. Baldwin*, No. 11-CV-00604-DN-EJF, 2013 WL 868262, at *2 (D. Utah Mar. 7, 2013) (noting with respect to deposition testimony that "[m]ere conclusory assertions are not admissible in evidence, and are not sufficient to create a genuine issue of fact for trial"). Indeed, Mr. Foster later testified that Mr. Kunde told him during their April 11 call that "he wasn't in the loop" and "didn't even know [Mr. Foster] was suspended," belying Mr. Foster's claim to have personal knowledge of "the way management works" with respect to such matters. Foster Dep. at 116-17

13

[Doc. # 82-1].  Therefore, this testimony is inadmissible for purposes of summary judgment and does not create a genuine issue of material fact.

Accordingly, there is no genuine dispute that Mr. Foster was terminated before his April 11 phone call with Mr. Kunde.  Therefore, Mr. Foster's reading of Dr. Funk's letter during that call cannot be deemed a request for accommodation.  Mr. Foster, however, also contends he made a request for accommodation during his April 3 meeting with management.  Specifically, Mr. Foster testified that he told management during that meeting that he "had an appointment with the doctor to schedule surgery" the next day and "asked [for] a little cooperation."  *Id.* at 109-110.  This is the only other request for accommodation Mr. Foster contends he made for purposes of his wrongful termination and failure to accommodate claims.

### 3.  Accommodation of Medical Leave for Surgery

Mr. Foster first contends that he could have performed the essential functions of his job if he had been granted leave to have cervical spine surgery.  Accepting as true Mr. Foster's recollection of what he said at the April 3 meeting, his statements do not amount to a sufficiently "direct and specific" request for such an accommodation.  *Abercrombie,* 731 F.3d at 1141.  Not only did Mr. Foster not specify how much time he wanted off, or when he wanted to take it, he did not even specify whether his plans were certain, merely stating that he planned to "schedule" surgery.  An employer cannot consider an employee's request for medical leave if it does not know such facts.  One court, for example, held that a request for "some time off" was insufficiently direct and specific because the employee failed to specify "*when* she would need that time off."  *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 104 (1st Cir. 2007) (emphasis in original).  The court explained that the employer has "no duty to divine the need for

a special accommodation where the employee fails to make an adequate request." *Id.* (internal quotations and citation omitted).

If, for example, Mr. Foster had come to Mountain Coal after scheduling surgery and requested specific dates off from work, my conclusion would likely be different. But that is not the undisputed evidence. Indeed, Mr. Foster concedes that at his appointment the next day, the doctor "discussed the possibilities of surgery, but was concerned about performing a surgery without a change in Foster's work conditions" and "left Foster to consider his options." Resp. at 10 [Doc. # 93]. And it appears Mr. Foster ultimately never scheduled surgery. Thus, Mr. Foster never had any concrete plans to have surgery, and certainly never conveyed those plans to his employer.

Even if Mr. Foster had made an adequate request for leave to have surgery, he has not come forward with any evidence from which a jury could conclude that surgery would have enabled him to perform the essential functions of his job. As noted, the plaintiff bears the burden of showing he is able to perform the essential functions of his job. *Mason*, 357 F.3d at 1119. Mr. Foster has not met this burden for two reasons. First, he has presented essentially no evidence regarding what the essential functions of his job as a maintenance supervisor at Mountain Coal actually were. Second, he has presented no evidence that he could have performed those functions after surgery. The only function of the job he discusses in his brief is how much weight his job required him to lift, citing Mr. Langrand's testimony that it did not require him to lift more than 35 pounds and his expert's conclusion that he could lift more than this after surgery. Resp. at 22-23 [Doc. # 93]; Expert Report of Dr. Price at 5 [Doc. # 98-3]; Langrand Dep. at 132-33 [Doc. # 93-9].

This is certainly enough to create a fact issue regarding whether Mr. Foster could lift enough weight after surgery to carry out his job duties.  But Mr. Foster presents no evidence regarding any other essential functions of the maintenance supervisor position and whether surgery would enable him to perform those functions.  For example, a medical record regarding Mr. Foster's April 9, 2008 office visit with Dr. Funk notes that Mr. Foster "is on multiple medications that certainly interfere w/his cognitive abilities especially in unsafe situations" and that "Dr. Dwyer has recommended no further underground work where he requires helmet wear, tool belt and the usual apparatus of underground mining work w/risk of bumping his head, etc." Progress Notes at 3 [Doc. # 93-19].  Mr. Foster has cited no evidence to indicate that these issues would improve with surgery.  The only evidence of record appears to be to the contrary.  Dr. Dwyer, for example, noted at Mr. Foster's April 4, 2008 office visit that he did "not think that surgical intervention is in the patient's best interest."  Progress Note [Doc. # 82-23].  He explained that, even with surgery, Mr. Foster "may never see significant improvement in his symptoms if [he] were to continue to do the physically demanding occupation that he currently does in coal mining." *Id.*  Similarly, a doctor who treated Mr. Foster in 2013, Dr. Gebhard, noted that he did "not think that any cervical fusion would be that helpful for him based on the EMG findings."  Progress Note [Doc. # 82-37].

Mr. Foster argues in his brief that Dr. Dwyer would have "considered" surgery "if a specific pain generator could be identified," but says "they did not get far enough along to make such a determination."  Resp. at 15 [Doc. # 93].  Mr. Foster also argues that while Dr. Gebhard "recommended against a cervical spine fusion . . . a more aggressive surgeon might disagree." *Id.* at 15-16.  Arguments regarding what options doctors "considered" and what conclusions they

"might" have reached with respect to Mr. Foster's condition, however, cannot serve to show that surgery was appropriate, much less that surgery would have enabled him to perform the essential functions of his job at Mountain Coal.  Mr. Foster argues in his brief that an "EMG showing impingement at the C6 level  . . . indicates that a two level cervical fusion surgery at the C5-6 and C6-7 levels was appropriate" but cites no testimony or other evidence to support this conclusion.  *Id.* at 22.  Such "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Phillips*, 956 F.2d at 951 n. 3.

Further, Mr. Foster has not come forward with any evidence regarding how long he would have had to be absent from work due to the surgery.  "[P]hysical attendance in the workplace is itself an essential function of most jobs."  *Mason*, 357 F.3d at 1119 (collecting cases); *see also Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1161 (10th Cir. 2014) (employee who "couldn't work at any point or in any manner for a period spanning more than six months . . . isn't an employee capable of performing a job's essential functions").  *Cf. Valdez v. McGill*, 462 F. App'x 814, 818 (10th Cir. 2012) (medical leave not a reasonable accommodation if it is "uncertain if or when [the employee will] sufficiently recover from his impairments to be able to return to work").  For these reasons, Mr. Foster has not met his burden of producing evidence that he could perform the essential functions of his job as a maintenance supervisor with the accommodation of time off to have cervical spine surgery.

### 4.  Accommodation of Transfer to Another Position and Medical Leave

Mr. Foster also argues that a "combination of time off for medical treatment and reassignment to the Maintenance Planner position would have allowed [him] to continue working."  Resp. at 23 [Doc. # 93].  He identifies that medical treatment as either the cervical

spine surgery described above or "the occasional day off" to obtain facet joint injections, which he says have provided relief in the past. *Id.* at 24.  As explained above, Mr. Foster did not adequately request time off for surgery.  In addition, Mr. Foster does not even contend that he asked to be transferred to the maintenance planning position or that he asked for periodic time off to have injections.  As explained above, this precludes him from being a qualified individual on the basis of these accommodations.  *See supra* Section III.A.1.

Setting aside Mr. Foster's failure to seek these accommodations, he also has not presented adequate evidence that he could have performed the essential functions of the maintenance planning job if given leave for surgery or injections.  Mr. Foster presents evidence that the job "did not require [him] to wear a [hard hat] and tool belt, things that aggravated his symptoms" and did not require him to go "into the mine and perform[] physical labor."  Resp. at 24 [Doc. # 93].  Further, Mr. Foster cites evidence that he could comply with the job's lifting requirements after surgery.  As noted above, however, Mr. Foster has produced no evidence regarding the amount of medical leave he would have needed for surgery, and the same is true with regard to injections.  Mr. Foster has thus failed to demonstrate that he could perform the essential functions of the job, namely physical attendance.  *See Mason*, 357 F.3d at 1119; *Hwang*, 753 F.3d at 1161.  *Cf. Valdez*, 462 F. App'x at 818.

Mountain Coal also contests the reasonableness of the requested job transfer.  "[A]t the summary judgment stage, the plaintiff-employee bears the burden of specifically identifying a vacant position, reassignment to which would serve as a reasonable accommodation."  *Duvall v. Georgia-Pac. Consumer Products, L.P.*, 607 F.3d 1255, 1263 (10th Cir. 2010).  Here, there is no evidence that the maintenance planning position was vacant.  Mr. Foster asserts that Mountain

18

Coal "rotated" employees through this position so they could learn the importance of maintenance planning.  Mr. Kunde so testified.  Kunde Dep. at 47-48 [Doc. # 93-3].  In addition, a declaration and handwritten salary logs produced by Mountain Coal show somewhat frequent turnover in the position.  Rod Sheets occupied the position from June 25, 2007 to December 2, 2008, which encompasses the time period relevant here, including the time of Mr. Foster's alleged requests for accommodation and termination.  Decl. of Jim Miller ¶ 3[Doc. # 98-4]. Before Mr. Sheets, Mr. Foster occupied the position for about four months.  *Id.*  After Mr. Sheets, Ben Brown occupied the position for about seven months.  *Id.*

    Mr. Foster has cited no authority for the proposition that a position can be deemed vacant simply because "no one was regularly assigned to it."  He correctly notes that the duty to accommodate through reassignment means that "the employee gets the vacant position if s/he is qualified for it," not merely that the employee gets the opportunity to compete with other applicants for the job.  *Smith*, 180 F.3d at 1166-67.  But the position still has to be "vacant," and Mr. Foster has not shown that to be the case here.  *Id.*  "In cases arising under the ADA, we do not sit as a 'super personnel department' that second guesses employers' business judgments." *Mason*, 357 F.3d at 1122 (internal quotations and citation omitted).  The undisputed evidence is that Mountain Coal rotated individuals through the planning position to teach them the importance of maintenance planning.  The undisputed evidence is also that Mr. Sheets was on assignment to that position at all relevant times.  Mountain Coal had no obligation to remove Mr. Sheets from the position to accommodate Mr. Foster, even if the company did not intend for Mr. Sheets to remain in the position forever.  *See Duvall*, 607 F.3d at 1261 (noting that if "a position is not vacant it is not reasonable to require an employer to bump another employee in order to

reassign a disabled employee to that position") (internal citation omitted).

It is certainly true that vacant positions include those that "the employer reasonably anticipates will become vacant in the fairly immediate future." *Smith*, 180 F.3d at 1175.  Mr. Foster has cited no evidence, however, indicating that Mountain Coal anticipated at the time of his alleged requests for accommodation in early April 2008, or at any other relevant time, that the maintenance planning position would become vacant in the fairly immediate future.  The evidence is that Mr. Sheets occupied the job until December 2, 2008, more than seven months after Mr. Foster's termination.  Seven months is not the fairly immediate future.  *Cf. Lara v. State Farm Fire & Cas. Co.*, 121 F. App'x 796, 802 (10th Cir. 2005) (noting that if the employer knows "an equivalent position for which the individual is qualified will become vacant next week, then that position should be considered vacant and the employer may have a duty to reassign the employee to that position when it becomes available") (internal citation, quotations, and alteration omitted).  Moreover, there is no duty to offer transfers after an employee is terminated.  *Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061, 1065 (10th Cir. 2001) (employer not required to offer employee newly created position "when it became available six months after his termination").

It is not clear, but to the extent Mr. Foster suggests that the position actually was vacant—*i.e.,* that no one was assigned to the job, "regularly" or otherwise—he has cited no competent evidence suggesting this to be the case.  Mr. Foster testified that it "seemed like" Mr. Sheets only stayed in the position for "six, seven months" and then the company "started rotating people through it."  Foster Dep. at 295-96 [Doc. # 93-7].  Testimony regarding what it "seemed like" is speculative and for this reason alone does not defeat summary judgment.  *Self*, 439 F.3d

at 1236.  Even if taken as fact, however, Mr. Foster's testimony merely establishes that someone

other than Mr. Sheets had "rotated" into the position by February or March of 2008; it does not

establish that there was a vacancy at the time of Mr. Foster's alleged requests for

accommodation or at any other time.  Accordingly, I conclude that Mr. Foster has not met his

burden of showing that the maintenance planning position was vacant.  Therefore, transfer to that

position was not a reasonable accommodation.

     In sum, there is no evidence from which a reasonable jury could conclude that Mr. Foster

adequately requested reasonable accommodations; that he could have performed the essential

functions of his job at Mountain Coal with reasonable accommodations; or that transfer to the

maintenance planning position was a reasonable accommodation.  Accordingly, the Court must

enter summary judgment against Mr. Foster on his wrongful termination and failure to

accommodate claims under the ADA.

### B.  CADA Claim

     Mr. Foster brings a single claim under the CADA that alleges wrongful termination and

failure to accommodate based on the same facts discussed above.  Am. Compl. ¶¶ 323-43 [Doc.

#12].  Colorado courts interpret the CADA in accordance with the ADA, and neither party

disputes this.  *St. Croix v. Univ. of Colo. Health Scis. Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007)

("[T]hus, we look to federal cases for guidance in applying the Colorado statute."); *Lee v.*

*Spectranetics Corp.*, No. 12-CV-00633-WYD-MEH, 2013 WL 5416972, at *4 (D. Colo. Sept.

27, 2013) ("The ADA and the CADA are, essentially, parallel statutory schemes that address

disability discrimination. . . .  Thus, Colorado courts rely upon ADA case law in analyzing

CADA claims.").  Neither party has identified any way in which Mr. Foster's CADA claim

differs from his wrongful termination and failure to accommodate claims under the ADA. Therefore, summary judgment will also enter against Mr. Foster on his CADA claim.

## C. Retaliation Claim Under ADA

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To make out a prima facie case of retaliation under this provision, the plaintiff must show "(1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012). Unlike discrimination claims, a retaliation claim does not require that the plaintiff be a "qualified individual with a disability." *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001).

"If a plaintiff establishes these factors, the employer has the burden of showing it had a legitimate, nondiscriminatory reason for the adverse action. If the employer can do so, the burden shifts back to the plaintiff to prove pretext, which requires a showing that the proffered non-discriminatory reason is unworthy of belief." *Picture People*, 684 F.3d at 988 (internal quotations and citations omitted). Requests for accommodation constitute "protected opposition to discrimination." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007) (citing *Selenke*, 248 F.3d at 1265). In addition, the parties do not dispute that Mr. Foster's suspension and termination constitute "materially adverse actions."

Mr. Foster contends he made three protected requests for accommodation that led to the adverse actions. The first alleged request is when Mr. Foster read Dr. Funk's April 11, 2008 letter to Mr. Kunde. As explained above, this communication took place after Mr. Foster's termination. Therefore, Mr. Foster cannot show any causal link between that communication and the adverse actions. *See Jones*, 502 F.3d at 1194-95 ("Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct, as required by statute.") (emphasis in original); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234-35 (10th Cir. 2000) (retaliation claim failed for lack of causation where employer made discharge decision two days before he filed grievance).

The second alleged request was Mr. Foster's comment to management during the April 3, 2008 meeting that he "had an appointment with the doctor to schedule surgery" the next day. Foster Dep. at 109-110 [Doc. # 82-1]. Here, too, causation is lacking. Again, the employer must "know[] that an employee is engaging in protected activity." *Jones*, 502 F.3d at 1194-95. As explained above, Mr. Foster's statement was insufficiently "direct and specific" to "give the employer notice of the needed accommodation." *Abercrombie*, 731 F.3d at 1141. This is because Mr. Foster did not state that he had actually scheduled surgery or indicate how many days of leave he would need and when he would need to take them. As a result, Mr. Foster cannot show that Mountain Coal retaliated against him as a result of his comment.

Finally, Mr. Foster notes that he took time off for hernia surgery beginning February 15, 2008. He contends that he must have made a request for this time off sometime after January 29, 2008, when his doctor apparently scheduled him for that surgery. Resp. at 30 [Doc. # 93]; Preoperative History and Physical [Doc. # 93-10]. This version of Mr. Foster's retaliation claim

fails on the first element because he has produced no evidence that he was disabled or perceived

to be disabled on the basis of his hernia.  "It is clear that a temporary disability does not meet the

standards of the ADA."  *Prathan v. Autoliv ASP, Inc.*, 117 F. App'x 650, 651 (10th Cir. 2004).

A hernia is a temporary disability.  *See, e.g., Morgan v. Goodwill Indus. of Denver, Inc.*, No.

12-CV-00274-WYD-CBS, 2013 WL 6728777, at *5 (D. Colo. Dec. 20, 2013); *Peoples v.

Langley/Empire Candle Co.*, No. 11-2469-CM-JPO, 2012 WL 171340, at *2 (D. Kan. Jan. 20,

2012); *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996).  And while a retaliation claim can

be based on a good faith belief of entitlement to accommodation, *Jones*, 502 F.3d at 1194, where

a plaintiff "has not shown that he had a good faith belief that he was disabled or perceived as

disabled, his request for an accommodation cannot be considered protected by the ADA."

*Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).  Here, Mr. Foster has

presented no evidence of any good faith belief he may have had in making his request for leave

to have hernia surgery.  In this regard, I note that Mr. Foster did not list his request for leave to

have hernia surgery in response to Mountain Coal's interrogatory asking him whether he

"contend[ed] that, during 2008, [he] requested a reasonable accommodation of Mountain Coal,"

and to describe any such requests.  *See* Pl.'s Am. Resp. to Defs.' 1st Set of Interrogs. at 3-4

[Doc. # 82-29].  Accordingly, Mr. Foster's claim fails for lack of evidence that he "engaged in

protected opposition to discrimination."  *Picture People,* 684 F.3d at 988.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.       Defendants' Motion for Summary Judgment as to Eugene Foster [Doc. # 82] is

GRANTED;

2.      Plaintiff Eugene Foster's claims are DISMISSED WITH PREJUDICE;

3.      Final judgment shall enter in favor of Defendants on Mr. Foster's claims;

4.      Costs are awarded Defendants; and

5.      All other pending motions [Docs. # 83, 99, 101] are DENIED AS MOOT.

Dated:  December <u>22</u>, 2014, in Denver, Colorado.

BY THE COURT:


<u>s/Lewis T. Babcock</u>
LEWIS T. BABCOCK, JUDGE